IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF GEORGIA
ALBANY DIVISION

| | |
|---|---|
| STACY L. CODY, | : |
| Plaintiff, | : |
| vs. | : Civil Action No. |
| | : **1:05-CV-91 (WLS)** |
| JO ANNE B. BARNHART, | : |
| Commissioner of Social Security, | : |
| Defendant. | : |

**RECOMMENDATION**

The plaintiff herein filed applications for Disability Insurance Benefits and Supplemental Security Income Benefits on July 11, 2002; the application were denied initially and upon reconsideration, and the plaintiff then requested a hearing before an Administrative Law Judge (ALJ). The ALJ denied plaintiff's claim, and the Appeals Council affirmed the ALJ's decision, making it the final decision of the Commissioner. The plaintiff subsequently filed an appeal to this court. Jurisdiction arises under 42 U.S.C. § 405(g). All administrative remedies have been exhausted.

DISCUSSION

In reviewing the final decision of the Commissioner, this court must evaluate both whether the Commissioner's decision is supported by substantial evidence and whether the Commissioner applied the correct legal standards to the evidence. Bloodsworth v. Heckler, 703 F.2d 1233, 1239 (11th Cir. 1983). The Commissioner's factual findings are deemed conclusive if supported by substantial evidence, defined as more than a scintilla, such that a reasonable person

would accept the evidence as adequate to support the conclusion at issue.  Cornelius v. Sullivan, 936 F.2d 1143, 1145 (11th Cir. 1991); Richardson v. Perales, 402 U.S. 389, 401 (1971).  In reviewing the ALJ's decision for support by substantial evidence, this court may not re-weigh the evidence or substitute its judgment for that of the Commissioner.  "Even if we find that the evidence preponderates against the [Commissioner's] decision, we must affirm if the decision is supported by substantial evidence."  Bloodsworth, 703 F.2d at 1239.  "In contrast, the [Commissioners'] conclusions of law are not presumed valid....The [Commissioner's] failure to apply the correct law or to provide the reviewing court with sufficient reasoning for determining that the proper legal analysis has been conducted mandates reversal."  Cornelius, 936 F.2d at 1145-1146.

20 C.F.R. § 404.1520 (1985) provides for a sequential evaluation process to determine whether a claimant is entitled to Social Security disability benefits.  The Secretary employs the following step-by-step analysis in evaluating a claimant's disability claims:  (1) whether the claimant is engaged in gainful employment;  (2) whether claimant suffers from a severe impairment which has lasted or can be expected to last for a continuous period of at least twelve months;  (3) whether claimant suffers from any of the impairments set forth in the listings of impairments provided in Appendix 1;  (4) whether the impairments prevent claimant from returning to his previous work;  and (5) whether claimant is disabled in light of age, education, and residual functional capacity.  Ambers v. Heckler, 736 F.2d 1467, 1470-71 (11th Cir.1984).  Should a person be determined disabled or not disabled at any stage of the above analysis, further inquiry pursuant to the analysis ceases. Accordingly, if a claimant's condition meets an impairment set forth in the listings, the claimant is adjudged disabled without considering age,

education, and work experience.  20 C.F.R. § 404.1520(d).

The ALJ concluded that plaintiff had "severe" impairments of right eye blindness.  The ALJ concluded that plaintiff retained the residual functional capacity for work that did not require full vision, driving, or exposure to hazards.  Further, the ALJ determined that plaintiff was limited to occasional contact with the general public, but that she could understand, remember, and follow simple instructions and could sustain concentration and pace for simple tasks, limitations that precluded plaintiff from performing her past relevant work.  The ALJ determined that she could perform work that exists in significant numbers, such as a garment sorter, kitchen helper, and housekeeper/maid.  (Tr. 14, 523).

Plaintiff, who is *pro se*, appears to contend on appeal herein that she is disabled due to vision problems related to her left eye, dysfunctional uterine bleeding, and hypertension.    Plaintiff states that she is completely blind in her right eye, and therefore she constantly strains her left eye.  Additionally, plaintiff states that she has pain and swelling in her left eye; however, she acknowledges that none of her medical providers have stated that she is disabled because of her eye. (Plaintiff's brief, ¶ I, Doc. 15).

Plaintiff also states that she has been diagnosed with Polycystic Ovary Syndrome, which causes abnormal uterine bleeding, irregular hair growth, obesity, high blood pressure, high cholesterol, infertility, and anemia, which results in tiredness, shortness of breath, and the lack of energy.  (Plaintiff's brief, ¶ 2, Doc. 15).

Finally, plaintiff states that her high blood pressure is uncontrollable, which causes migraine headaches, shortness of breath, pressure over her eye and a higher risk for stroke.  (Plaintiff's brief, ¶ 3, Doc. 15).

The ALJ noted that plaintiff had good vision in her remaining eye (Tr. 13), and that the medical evidence revealed no significant limitation of her left eye (Tr. 14).  As noted by the ALJ, plaintiff was advised to use protective eye wear, but no other vision restrictions were recorded (Tr. 14, 149).  Medical records related to plaintiff's left eye, dated July 28, 2004 and from Wall Eye Care Associates, reflect that plaintiff's left eye was "feeling better; [no] problems now" (Tr. 243). Further, the medical evidence shows that plaintiff's episcleritis was resolved with medication (Tr. 244). Records from John M. Dixon, M.D. at Dixon Eye Care from October 14, 2002, reflect that plaintiff's best-corrected vision in her left eye was 20/50 and that her left eye was "normal" (Tr. 135). Dr. Dixon also specifically found that the plaintiff's extraocular muscles showed full ductions (rotation of the eye) on the left, and her pupil was briskly reactive (Tr. 135).  Confrontation fields were grossly within normal limits, and the lens and vitreous were clear after dilation (Tr. 135). The fundus (back portion of the interior of the eyeball) showed a healthy disc and normal macula (Tr. 135). Dr. Dixon also found that the retina was normal to the equator (Tr. 135). Dr. Dixon specifically found that plaintiff did not meet the Social Security listing for blindness (Tr. 135). See 20 C.F.R. pt. 404, subpt. P, app. 1, § 2.02.

Following an examination at Wall Eye Care Associates in November 2004, where plaintiff complained of eye pain, it was determined that plaintiff's complaints were due to functional hysterical amblyopia (reversible reduced visual acuity with no corroborating objective evidence) (Tr. 401-02). In June 2002, although plaintiff did have pain in her left eye, she reported that use of a cold compress helped and swelling around the eye was getting better (Tr. 153). Plaintiff reported on May 24, 2002, that her eye medication had improved the pain behind her left eye "45%" and that the burning and swelling had stopped and tearing had decreased (Tr.

154).

At the hearing, plaintiff testified that some days she sees "real good" out of her left eye (Tr. 481). Further, she testified that she takes no regular medication for the eye (Tr. 492). She testified that she had been given drops for use when needed and that the drops helped for a short period of time (Tr. 492).

The ALJ accounted for plaintiff's monocular vision by limiting plaintiff to no work that requires full vision, driving, or exposure to hazards (Tr. 15). Further, the ALJ found that plaintiff could understand, remember, and follow simple instructions and sustain concentration/pace for simple tasks (Tr. 15). Also, the ALJ found that plaintiff should have limited contact with the general public (Tr. 15). The ALJ asked the vocational expert whether a person with plaintiff's limitations could perform any of her past relevant work with this RFC, to which the VE replied "no," but the VE stated that there were other jobs in the national economy that she could perform (Tr. 14, 523). The VE stated that a person with plaintiff's residual functional capacity could perform the jobs of garment sorter, kitchen helper, and housekeeper/maid (Tr. 14, 523).

The ALJ found that plaintiff's hypertension and uterine bleeding were not "severe" within the meaning of the regulations. (Tr. 12, 13).  See 20 C.F.R. § 404.1520(a)(4)(ii), (c), 416.920(a)(4)(ii), (c). Plaintiff, however, claims that as a result of abnormal bleeding, she cannot walk and is stricken to bed rest. (Pl.'s Br. ¶ 2.)   Plaintiff also claims that her high blood pressure is uncontrollable and causes multiple problems. (Pl.'s Br. ¶ 2. )

A severe impairment is an impairment which significantly limits a claimant's physical or mental abilities to do basic work activities. See 20 C.F.R. §§ 404.1520(c), 416.920(c); see also 20 C.F.R. §§ 404.1521(a), 416.921(a) (defining a non-severe impairment).

The ALJ specifically found that plaintiff's hypertension could be controlled by treatment when she was compliant, and the medical evidence of record supports her finding (Tr. 13, 362-63, 368). Plaintiff was seen by Baker County Primary Care on September 2, 2003, when plaintiff stated that she had been on Vencor for blood pressure and hydrochlorothiazide (HTCZ) was added; however, plaintiff reported that she never got the HTCZ and did not follow up (Tr. 362). On the date of exam Plaintiff had been out of her blood pressure medication for approximately a month (Tr. 362). The assessment reflected hypertension, noncompliance, obesity, eye infection, and history of type 2 diabetes, and Plaintiff was prescribed Norvasc and Dyazide (Tr. 363). A follow up appointment was scheduled, however Plaintiff apparently canceled the follow up, with a notation in the record stating that Plaintiff had not liked what she had been told, presumably during the September 2, 2003, examination, and that she was returning to her other doctor (Tr. 363). Plaintiff was examined on September 10, 2003, at Archbold Medical Center and was diagnosed with hypertension and continued on medication (Tr. 368). Plaintiff was restarted on Atenelol in April 2003, which, it was noted, had worked well for her hypertension in the past (Tr. 373).

Medical records dated May 2004 and November and December 2003 noted that plaintiff's hypertension was uncontrolled; however, there is no indication as to whether plaintiff had been compliant with her medication (see Tr. 250-52). The evidence shows that Plaintiff had been noncompliant in the past (Tr. 362). Further, the records do not reflect any limitations related to Plaintiff's hypertension (see Tr. 250- 52). See McCruter, 7901 F.2d at 1547.

The mere  diagnosis of a condition does not establish that the condition interfered with her ability to work for any consecutive twelve-month period. See McCruter v. Bowen, 791 F.2d

1544, 1547 (11th Cir. 1986) ("[T]he severity of a medically ascertained disability must be measured in terms of its effect upon ability to work, and not simply in terms of deviation from purely medical standards of bodily perfection or normality.")  Plaintiff has failed to show that her ability to work was limited in any way by her hypertension.

   The ALJ concluded that plaintiff's episode of dysfunctional bleeding did not limit more than minimally her physical ability to do basic work activities.  Although the record shows that plaintiff was diagnosed with menorrhagia  (Tr. 142, 148, 228, 319, 341),  plaintiff failed to produce evidence to show that her episodes of menorrhagia more than minimally limited her physical ability to do basic work activities.  The ALJ specifically noted that plaintiff had an episode of dysfunctional uterine bleeding with no long-term consequences (Tr. 14). The most recent medical records related to plaintiff's uterine bleeding appear to be from March 27, 2003, where it was noted that her bleeding was slowing, and she was prescribed medication (Tr. 219).  Plaintiff contends that she "recently lost so much blood that she had to be hospitalized and given two units of blood on November 1, 2005." (Pl.'s Br. ¶ 2.).   Although this may be true, the period under consideration for this case extends only through the date of the ALJ's decision, dated November 23, 2004 (see Tr. 16 finding 12). Accordingly, evidence of this hospitalization, which is not a part of the record, is outside the period under consideration. See 20 C.F.R. § 404.953(a).

   On March 15, 2003, Plaintiff reported that her bleeding was resolved, and she denied pain (Tr. 331). An ultrasound of Plaintiff's pelvis on March 13, 2003, was unremarkable (Tr. 226, 336).  On October 22, 2002, Plaintiff's bleeding had slowed down to "just a little spotting" (Tr. 227).

   Additionally, Plaintiff's hearing testimony supports the ALJ's decision (Tr. 13, 489).

Plaintiff testified at the hearing that she started bleeding again in 2003, but she was given medication to stop her from bleeding (Tr. 489). Further, plaintiff testified that doctors had gotten the bleeding under control (Tr. 489).  Although Plaintiff contends that she was diagnosed with polycystic ovary syndrome, the medical records do no reflect this diagnosis (Tr. 219, 226, 227, 228, 232-33).   The mere diagnosis of a condition does not establish that the condition interfered with her ability to work for any consecutive twelve-month period. See McCruter, 791 F.2d at 1547. Plaintiff has failed to show that she was limited in any way as a result of her episodes of dysfunctional bleeding.

   Plaintiff also reported performing daily activities such as laundry, vacuuming, washing dishes, shopping, going to church, and watching television (Tr. 101, 102, 107, 108, 112, 113). See 20 C.F.R. §§ 404.1529(c)(3), 416.929(c)(3) (plaintiff's daily activities are relevant factors considered in evaluating subjective symptoms such as pain); Macia v. Bowen, 829 F.2d 1009, 1012 (11th Cir. 1987) (finding that the Regulations do not prevent the ALJ from considering daily activities at the fourth step of the sequential evaluation process).  The ALJ considered these activities along with the medical record to determine that plaintiff was not disabled.  Substantial evidence supports the ALJ's finding that Plaintiff did not have "severe" hypertension or menorrhagia and her conclusion that Plaintiff was not disabled.

   Inasmuch as the Commissioner's final decision in this matter is supported by substantial evidence, it is RECOMMENDATION of the undersigned that the Commissioner's decision be **AFFIRMED** pursuant to Sentence Four of § 405 (g).  Pursuant to 28 U.S.C. § 636(b)(1), the parties may file written objections to this recommendation with the Honorable W. Louis Sands, United States District Judge, WITHIN TEN (10) DAYS of receipt thereof.

**SO RECOMMENDED**, this 22nd day of August, 2006.

                //S Richard L. Hodge
                RICHARD L. HODGE
                UNITED STATES MAGISTRATE JUDGE

msd